**FOR THE DISTRICT OF SOUTH CAROLINA**
**CHARLESTON DIVISION**

| | |
|---|---|
| DURHAM SCHOOL SERVICES, L.P., ) | |
| ) | No. 2:14-cv-1241-DCN |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | |
| GENERAL DRIVERS, ) | |
| WAREHOUSEMEN and HELPERS, ) | |
| LOCAL UNION NO. 509, a/w ) | |
| INTERNATIONAL BROTHERHOOD ) | **ORDER** |
| OF TEAMSTERS, ) | |
| of the National Labor Relations Board, ) | |
| ) | |
| Defendant. ) | |
| _____) | |
| DURHAM SCHOOL SERVICES, L.P., ) | |
| ) | |
| Third-Party Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | |
| PIEDMONT GRIEVANCE COMMITTEE, ) | |
| ) | |
| Third-Party Defendant. ) | |
| _____) | |

This matter is before the court on third-party defendant the Piedmont Grievance Committee's ("the PGC") motion for sanctions pursuant to 28 U.S.C. § 1927 and the court's inherent equitable powers requesting that the court order plaintiff Durham School Services, L.P. ("Durham") to pay the reasonable expenses, including attorney's fees and costs, incurred in defending this action. For the reasons set forth below, the court denies the PGC's motion.

1

## I. BACKGROUND

Durham is a limited partnership organized under the laws of Delaware engaged in providing bus transportation to students in Charleston County. Durham's Mot. for Summ. J. 2. Durham operates a fleet of over 350 school buses and employs over 400 school bus drivers. Id. Defendant General Drivers, Warehousemen, and Helpers, Local Union 509 ("the Union") is an unincorporated labor union with its principal place of business in West Columbia, South Carolina. Id. at 3. Durham and the Union entered into a collective bargaining agreement in 2007, and again in 2013 ("the 2013 CBA"). Id. This case arose from Durham's termination of a Union employee. Id. at 9. The termination led to a disputed decision issued by the PGC, a bi-partite committee established to hear unresolved grievances between Durham and the Union. Id.

On April 4, 2014, Durham filed the present action against the Union pursuant to Section 301 of the Labor Management Relations Act of 1959 ("LMRA"), 29 U.S.C. § 185, alleging that the "PGC panel acted in bad faith, arbitrarily, and capriciously" in rendering its decision, and thereby denied Durham "a fundamentally fair hearing." Compl. ¶ 22. Durham asked that the court issue an "order vacating and nullifying the PGC decision" and that "the costs of this proceeding be taxed to [the Union]." Id. at 8. On April 14, 2014, the Union filed a counterclaim seeking enforcement of the PGC decision and an order requiring Durham to pay backpay to the discharged employee. On May 12, 2014, Durham filed a third-party complaint against the PGC and individual members of the PGC alleging in a breach of contract claim that the PGC breached the by-laws in issuing its decision.

On July 22, 2014, the PGC's counsel sent Durham's counsel a letter highlighting reasons why he believed the PGC and the individual member defendants should be dismissed from the lawsuit, including subject matter jurisdiction under 29 U.S.C. § 185, immunity, and Rule 14.  See PGC's Mot. Ex. A.  The letter stated that if the action against PGC was not dismissed, the PGC would proceed with a motion to dismiss and seek costs and attorney's fees incurred in having to defend the claim.  Id.  On August 1, 2014, Durham's counsel responded to the letter, requesting additional time to research the issues raised in the letter.  PGC's Mot. Ex. B.  On August 27, 2014, Durham's counsel responded, stating that he would agree to dismiss the individual defendants but not the PGC.  Id.  Durham argued that the PGC did not have immunity as an arbitrator in the traditional sense because it was a joint grievance resolution body and membership organization whose proceedings bear only minimal similarity to arbitration.  Id.  Durham further argued that the by-laws created a contract between the PGC and its members, the Union and Durham.  Id.  Durham further contended that the cases cited by the PGC were factually dissimilar and that Durham had not found "any case that expressly applies [arbitral] immunity to a joint grievance resolution body such as the PGC."  Id.  Durham did, however, agree to reconsider its position if the PGC could cite a case that "specifically addressed an organization such as the PGC."  Id.

On March 27, 2015, the Union, Durham, and the PGC each filed motions for summary judgment.   On June 1, 2015, the court conducted a hearing on the motions for summary judgment.  On July 29, 2015, the court denied Durham's motion for summary judgment, granted the Union's motion for summary judgment, and granted the PGC's motion for summary judgment.  Pertinent to this motion, the court held that the PGC was

immune from suit under the doctrine of arbitral immunity. On August 13, 2015, Durham appealed the court's ruling on the motions for summary judgment. The only issues on appeal relate to the dispute between Durham and the Union and not the PGC.

On August 28, 2015, the PGC filed the present motion for sanctions. The PGC cites its financial limitations in support of its motion, asserting that "[i]n order to pay for the fees and costs incurred, [it] had to enact a special assessment against its members in order to raise the necessary funds." PGC Mot. 4. Durham filed a response in opposition to the motion on September 14, 2015, and the PGC replied on September 24, 2015. The motion has been fully briefed and is now ripe for the court's review.[1]

## II. DISCUSSION

The PGC argues that Durham "acted unreasonably, vexatiously, without justification and in bad faith in the filing and prosecution of this action after [the] PGC notified Durham that there was no legal basis for its claims against [the] PGC." PGC's Mot. 5. The PGC moves for sanctions pursuant to both 28 U.S.C. § 1927 and the "general equitable powers" of this court. PGC's Mot. 2. In response, Durham argues that sanctions should not be imposed pursuant to § 1927 or the court's inherent powers because it did not multiply the proceedings or act in bad faith. Durham Resp. 4–5. The court will first ensure that it has jurisdiction to rule on the PGC's motion in light of the pending appeal. The court will then analyze whether the PGC is entitled to sanctions under either standard below.

---

[1] The court will address the legal standards applicable to each claim for attorney's fees below.

### A.  Jurisdiction

Even though Durham has filed its notice of appeal, neither party claims that this court lacks jurisdiction to rule on the PGC's motion for sanctions. However, this court has an independent obligation to ensure that jurisdiction in fact exists. Arbaugh v. Y&H Corp., 546 U.S. 500, 514 (2006). When a party files a notice of appeal, jurisdiction over all questions presented in the appeal is transferred from the district court to the court of appeals. Griggs v. Provident Consumer Disc. Co., 459 U.S. 56, 58 (1982); Jankovich v. Bowen, 868 F.2d 867, 871 (6th Cir. 1989). Accordingly, notwithstanding the filing of a notice of appeal, district courts retain jurisdiction to determine collateral and ancillary matters that do not affect the questions presented on appeal. Langham-Hill Petroleum, Inc. v. S. Fuels Co., 813 F.2d 1327, 1330–31 (4th Cir. 1987); Weaver v. Fl. Power & Light Co., 172 F.3d 771, 771 (11th Cir. 1999). An award of costs and attorney's fees has generally been recognized as a collateral issue that is appropriate for resolution by the trial court even after a party has filed a notice of appeal. See Buchanan v. Stanships, Inc., 485 U.S. 265, 268 (1988); Langham-Hill, 813 F.2d at 1331 ("[T]he request for attorney's fees raised issues collateral to the main cause of action. Attorney's fees are not compensation for the injury giving rise to the action and thus are not an element of relief." (citing White v. N.H. Dep't of Emp't Sec., 455 U.S. 445, 452 (1982))).

The present motion for sanctions relates to Durham's claims against the PGC. Durham appealed the court's ruling in its order as it pertains to the Union and not the PGC. The issues in the motion for sanctions are collateral and ancillary to the issues presented in Durham's appeal. Therefore, the court retains jurisdiction to decide this motion despite Durham's pending appeal.

**B.     28 U.S.C. § 1927**

The PGC first seeks attorney's fees pursuant to 28 U.S.C. § 1927. Title 28 United States Code section 1927 provides that "[a]ny attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." "The unambiguous text of § 1927 aims only at attorneys who multiply proceedings." DeBauche v. Trani, 191 F.3d 499, 511 (4th Cir. 1999). Section 1927 "does not distinguish between winners and losers, or between plaintiffs and defendants." Gagliardo v. Peninsula Reg'l Med. Ctr., 467 F. App'x 237, 238 (4th Cir. 2012) (quoting Roadway Express, Inc. v. Piper, 447 U.S. 752, 762 (1980)). Moreover, "[t]he statute is indifferent to the equities of a dispute and to the values advanced by the substantive law." Id. (quoting Roadway, 477 U.S. at 762). Instead, the statute is "concerned only with limiting the abuse of court processes." Id. "Thus, an attorney who files a meritorious claim and wins a substantial verdict may still be assessed sanctions under § 1927 if, during the case, he 'multiplies the proceedings . . . unreasonably and vexatiously.'" DeBauche, 191 F.3d at 511. Likewise, an attorney who files a meritless claim may not be sanctioned under § 1927 if he does not engage in" conduct which multiplies the proceedings vexatiously and unreasonably. Id.

For this reason, a court considering the propriety of a § 1927 award must focus "on the <u>conduct of the litigation and not on its merits</u>." Id. (quoting DeBauche, 191 F.3d at 511) (emphasis added). The Fourth Circuit has held that "[b]ad faith on the part of the attorney is a <u>precondition</u> to imposing fees under § 1927." E.E.O.C. v. Great Steaks, Inc.,

6

667 F.3d 510, 522 (4th Cir. 2012) (citing Chaudhry v. Gallerizzo, 174 F.3d 394, 411 n.14 (4th Cir. 1999); Brubaker v. City of Richmond, 943 F.2d 1363, 1382 n.25 (4th Cir. 1991) (emphasis added).  The Fourth Circuit reviews a district court's award under § 1927 for an abuse of discretion.  Chaudhry, 174 F.3d at 410.  The factual findings underpinning the district court's award are reviewed for clear error.  Ohio River Valley Envtl. Coal., Inc. v. Green Valley Coal Co., 511 F.3d 407, 413 (4th Cir. 2007).

The parties first disagree as to the appropriate standard to apply in determining whether to award fees under § 1927.  Durham argues that the PGC must establish bad faith.  The PGC argues that while some courts cluster the standard into the phrase "bad faith," courts should employ the definition of bad faith as defined in Chambers v. Nasco, Inc., 501 U.S. 32, 45–46 (1991), to include "vexatiously, wantonly, or for oppressive reasons."

It is clear that in the Fourth Circuit, "[b]ad faith on the part of the attorney is a precondition to imposing fees under § 1927."  Great Steaks, 667 F.3d at 522 (internal citations omitted) (emphasis added).  Further, § 1927 "focuses on the conduct of the litigation and not on its merits."  Id. (quoting DeBauche, 191 F.3d at 511) (internal quotation marks omitted).  Thus, in determining whether the PGC is entitled to fees under § 1927, the court must determine whether Durham acted in bad faith by unreasonably and vexatiously multiplying the proceedings.

The PGC asserts that Durham multiplied the proceedings by filing its third-party complaint because it added claims and parties to the action.  After the Union asserted its counterclaim against Durham for enforcement of the PGC's decision, Durham filed a third-party complaint against the PGC asserting a breach of contract claim.  There were

7

no discovery disputes between the parties, and the only documents Durham filed other than the original complaint were its motion for summary judgment and its responses in opposition to the Union and the PGC's motions for summary judgment.

The Fourth Circuit has found that a party's refusal to dismiss a case that lacks merit may constitute multiplying proceedings within the meaning of § 1927. Salvin v. Am. Nat. Ins. Co., 281 F. App'x 222, 226 (4th Cir. 2008) ("By refusing to voluntarily dismiss the case once its lack of merit became evident, [plaintiff] protracted the litigation."). The PGC cites Salvin in support of its motion. However, Salvin is easily distinguishable. In Salvin, all but one of the plaintiff's claims were dismissed. Id. at 224. During a deposition, the plaintiff gave answers that "made clear that her remaining breach of contract claim lacked merit," but her attorney refused to voluntarily dismiss the remaining claim. Id. Rather, the defendant was forced to filed a motion for summary judgment. Id. In response, the plaintiff relied on an alternative theory based on factual allegations not included in the complaint and included a new affidavit from the plaintiff that contained statements contradicting the testimony she provided in her deposition. Id.

Here, Durham filed one third-party complaint asserting a breach of contract claim and continued to pursue that same claim throughout discovery and the summary judgment briefing. Unlike the plaintiff in Salvin, Durham did not add new claims or new allegations after the close of discovery, nor did Durham submit contradictory testimony. The court finds DeBauche more applicable under these circumstances. In DeBauche, the plaintiff filed a complaint under 42 U.S.C. § 1983. DeBauche, 191 F.3d at 503. After the defendants filed a motion to dismiss, the plaintiff filed an amended complaint to modify some of the allegations and add additional defendants. Id. The district court awarded

8

defendants attorney's fees under § 1927.  Id. at 509.  The Fourth Circuit recognized that § 1927 "aims only at attorneys who multiply proceedings" and that the plaintiff only filed one amended complaint against the defendants seeking sanctions.  Id. at 511.  The court vacated the sanctions award pursuant to § 1927, holding that, as a matter of law, "the filing of a single complaint cannot be held to have multiplied the proceedings unreasonably and vexatiously."  Id. at 511–12.  Similarly, Durham filed only the third-party complaint and a motion for summary judgment against the PGC.  Therefore, Durham cannot be held to have multiplied the proceedings unreasonably and vexatiously.

However, even if Durham had vexatiously multiplied the proceedings, the PGC cannot establish bad faith to support and award of sanctions under § 1927.  The PGC argues that Durham acted in bad faith by recklessly pursuing its claims against the PGC despite arbitral immunity.  PGC's Reply 10–12.  "In the context of an award of attorney's fees, the Supreme Court has found that bad faith exists where 'a court finds that fraud has been practiced upon it, or that the very temple of justice has been defiled,' or where a party 'delay[s] or disrupt[s] the litigation or hampers a court order's enforcement.'"  Dash v. Mayweather, No. 3:10-cv-1036, 2011 WL 5357894, at *2 (D.S.C. Nov. 7, 2011) (quoting Chambers, 501 U.S. at 46).

There is absolutely no indication that Durham committed a fraud upon this court, nor did Durham did delay or disrupt the litigation or hamper the enforcement of a court order.  Rather, it appears that the PGC's motion focuses more on the merits of Durham's claims rather than its conduct throughout the course of the litigation.  However, the Fourth Circuit has held that sanctions cannot be imposed pursuant to § 1927 for filing a frivolous complaint.  See DeBuache, 191 F.3d at 512.  Although courts may impose

sanctions for filing a frivolous complaint under Federal Rule of Civil Procedure 11[2] the PGC did not move for sanctions pursuant to Rule 11.

Therefore, the court holds that Durham did not multiply the proceedings or act in bad faith as a matter of law. As such, the PGC is not entitled to attorney's fees pursuant to § 1927.

### C.    Inherent Authority to Impose Sanctions

The PGC alternatively moves for attorney's fees pursuant to the court's inherent equitable powers. "The district court has the inherent authority to impose sanctions against a party who 'has acted in bad faith, vexatiously, wantonly, or for oppressive reasons.'" Thomas v. Ford Motor Co., 244 F. App'x 535, 538 (4th Cir. 2007) (quoting Chambers, 501 U.S. at 45–46). "This inherent authority 'extends to a full range of litigation abuses.'" Id. (citing Chambers, 501 U.S. at 46). "Due to the very nature of the court as an institution," the court has the inherent power to issue sanctions "to impose order, respect, decorum, silence, and compliance with lawful mandates." U.S. v. Shaffer Equipment Co., 11 F.3d 450, 461 (4th Cir. 1993). This inherent power "is necessary to the exercise of all other powers" of the court. Id.

The inherent power to issue sanctions "must be exercised with the greatest restraint and caution" because it is not subject to regulation by Congress or the people. Id. at 461. "Moreover, a court must also comply with due process when exercising this

---

[2]    Rule 11 provides for sanctions against attorneys and parties who file pleadings that contain "claims[or] other legal contentions [that] are [not] warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law," or factual allegations that have neither evidentiary support nor the likelihood of forthcoming evidentiary support.

power." Dash, 2011 WL 5357894, at *2 (citing Chambers, 501 U.S. at 50). "A court must find bad-faith on the part of the person to be sanctioned before exercising its inherent power." Id. (citing Chambers, 501 U.S. at 45–46).

The parties again disagree as to the appropriate standard when determining whether to issue sanctions pursuant to the court's inherent equitable powers. Durham argues that the PGC must establish that it acted in bad faith to award attorney's fees under the court's inherent powers, Pl.'s Resp. 6–7, while the PGC argues that it is only required to demonstrate that Durham pursued the action "without justification" or that Durham's actions were "frivolous, unreasonable, or without foundation." PGC's Mot. 5.

In Chambers v. NASCO, Inc., the Supreme Court recognized the court's inherent power to assess attorney's fees as a sanction. 501 U.S. 32 (1991). The Court outlined exceptions to the American Rule that generally prohibits fee shifting, allowing courts to assess fees in the following three circumstances: (1) the common fund exception that allows a court to award attorney's fees to a party whose litigation efforts directly benefit others; (2) willful disobedience of a court order; and (3) when a party acted in bad faith, vexatiously, wantonly, or for oppressive reasons. Id. at 45. Under the third exception, if a court finds "that fraud has been practiced upon it, or that the very temple of justice has been defiled, it may assess attorney's fees against the responsible party, . . . as it may when a party shows bad faith by delaying or disrupting the litigation or by hampering enforcement of a court order." Id. (internal quotations omitted). The Supreme Court stated that "[t]he imposition of sanctions [under the third exception] transcends a court's equitable power concerning relations between the parties and reaches a court's inherent power to police itself, thus serving the dual purpose of 'vindicat[ing] judicial authority

11

without resort to the more drastic sanctions available for contempt of court and mak[ing] the prevailing party whole for expenses caused by his opponent's obstinacy.'" Id. at 46 (quoting Hutto v. Finney, 437 U.S. 678, 689, n.14 (1978)).

The Court further discussed what affect, if any, statutory mechanisms that provide for attorney's fees under certain circumstances usurp or displace the court's inherent powers to issue sanctions. Id. at 26–47. The Court stated that, "while the narrow exceptions to the American Rule effectively limit a court's inherent power to impose attorney's fees as a sanction to cases in which a litigant has engaged in bad-faith conduct or willful disobedience of a court's orders, many of the other mechanisms permit a court to impose attorney's fees as a sanction for conduct which merely fails to meet a reasonableness standard." Id. at 47 (emphasis added). For example, Rule 11 imposes an "objective standard of reasonable inquiry which does not mandate a finding of bad faith." Id. The Court held that "[t]here is, therefore, nothing in the other sanctioning mechanisms or prior cases interpreting them that warrants a conclusion that a federal court may not, as a matter of law, resort to its inherent power to impose attorney's fees as a sanction for bad-faith conduct." Id. at 50.

In arguing that a showing of bad faith is not required, the PCG relies on Christiansburg Garment Co. v. EEOC, 434 U.S. 412 (1978). In Christiansburg, however, the award was based on s 706(k) of Title VII, which expressly provides that "the court, in its discretion, may allow the prevailing party a reasonable attorney's fee." 42 U.S.C. § 2000e-5(k). Section 1988 of Title 42 U.S.C. similarly provides for attorneys' fees in cases brought under the Civil Rights Act, as amended. Christiansburg eliminates the bad faith requirement for awards made pursuant to such statutes. 434 U.S. at 421. The PGC

requests attorney's fees based on the court's inherent power and § 1927, not on any other statutory authority.  Further, Christiansburg was decided almost 15 years before Chambers.  Therefore, to the extent Christiansburg might be read to conflict with Chambers, the principles set out in Chambers rather than in Christiansburg govern this case.

As stated above, the PGC failed to establish bad faith.  However, the PGC also cites authority indicating that a court may award attorney's fees when a party challenges an arbitration award "without justification."[3]  The PGC argues that because Durham challenged the PGC's award, the court may award fees if the challenge was without justification.

### 1.      Without Justification

The PGC utilizes United Food and Commercial Workers, Local 400 v. Marval Poultry Co., 876 F.2d 346, 350 (4th Cir. 1989),[4] in support of its argument that the "without justification" standard should apply.  In Marval Poultry, the Fourth Circuit held that a court may award attorney's fees in an action brought under § 301 of the LMRA to set aside an arbitration award where the party "without justification, refuses to abide by the award of an arbitrator."  Id. at 350.  "Where a challenge goes to the fundamental issues of arbitrability or of whether an arbitration award 'draws its essence' from the contract, the standard for assessing its justification is indeed the relatively lenient one of whether it has 'any arguable basis in law.'"  Id. at 351.  On the other hand, a challenge to

---

[3]     The PGC served as the arbitrator for disputes between Durham and the Union.  Under the 2013 CBA, "[t]he decision of the Piedmont Grievance Committee shall be final and binding."  Union's Mot. Summ. J., Ex. 1, 10.

[4]     Notably, Marval Poultry was decided before Chambers.

the merits of an award is "presumptively unjustified." Id. at 351. A claim lacks an arguable basis in law when it is "based on an indisputably meritless legal theory." Neitzke v. Williams, 490 U.S. 319, 327 (1989).

Durham's claims against the Union were filed pursuant to § 301, while its claim against the PGC was a simple breach of contract claim pursuant to South Carolina law. Thus, Durham argues that Marval Poultry's without justification standard does not apply. Assuming arguendo that the "without justification" standard in Marval Poultry should apply, the court will analyze whether the PGC is entitled to sanctions under this standard.

Durham's complaint asserts that the PGC acted outside the scope of its authority under the CBA, disregarded its own by-laws, denied Durham a fair hearing, engaged in misconduct, and violated public policy. Durham's Resp. 10. Durham did not attack the merits of the PGC's decision but rather went to the essence of the CBA. See Clearon Corp. v. United Food & Commercial Workers, Local 400, 2010 WL 1404302, at *6 (S.D.W. Va. Mar. 30, 2010) ("[Plaintiff] alleged in this action that the arbitrator ignored the plain language of the CBA in order to reach a result he deemed just. Allegations of this sort go to whether an award 'draws its essence' from the agreement."). Therefore, because at least some of Durham's challenges went to the question of whether the arbitration award drew its essence from the CBA, Durham is entitled to the more lenient standard set forth in Marval Poultry of whether it had any "arguable basis in law" for the challenge.

### 2.     Arguable Basis

Durham argues that there is some legal support for its position that arbitral bodies do not enjoy immunity from breach of contract claims, just as there is no sovereign

14

immunity for breach of contract claims.  Durham's Resp. 14 (citing Kinsey Construction Co. v. S.C. Dep't of Mental Health, 272 S.C. 168 (1978), overruled on other grounds, Unisys Corp. v. S.C. Budget and Control Bd., 346 S.C. 158 (2001)).  Durham also argues that while the PGC had legal support for its position, it cited cases from other jurisdictions involving tort claims that presented varying factual scenarios.  Further, Durham contends that there was no case law addressing arbitral immunity as it applies to a joint grievance resolution body.

In its ruling on the PGC's motion for summary judgment, the court only cited one case from South Carolina, Corbin v. Washington Fire & Machine Ins. Co., 278 F.Supp. 393, 399 (D.S.C. 1968), in which the court held that statements made in an arbitral proceeding are entitled to absolute immunity and could therefore not support a defamation claim.  Durham argues that one 50 year old case that is not directly on point "hardly closed the door on parties and their attorneys . . . making arguments against arbitral immunity in other cases presented different facts."  Durham's Resp. 13.  Durham further cites numerous South Carolina cases that demonstrate an aversion to immunity defenses in general.  Id.  Additionally, Durham argues that immunity is an affirmative defense that the PGC must establish as applied to the facts of this case.  Id. at 15–16.

The court finds that there is an arguable basis in the law for Durham's arguments.  Neither party cited a case directly on point regarding arbitral immunity as it applied to a breach of contract claim against a joint grievance resolution body.  Further, Durham provided at least some legal support for its position.  Most importantly, courts within this circuit have continuously highlighted the narrow nature of the court's inherent power to issue sanctions, recognizing that such power should be exercised with caution in only the

most narrow and extreme circumstances. Hensley v. Alcon Labs., Inc., 277 F.3d 535, 543 (4th Cir. 2002) ("[T]he district court has authority to shift attorney's fees, but again only in the extraordinary circumstances where bad faith or abuse can form a basis for doing so.") (emphasis added); United States v. Shaffer Equip. Co., 11 F.3d 450, 461 (4th Cir. 1993) (emphasizing that inherent power to impose sanctions "must be exercised with the greatest restraint and caution, and then only to the extent necessary"). Although the court clearly found Durham's claims against the PGC to be without merit, the court is unwilling to exercise its inherent powers to award sanctions under these circumstances in which evidence of vexatious and bad faith conduct is entirely lacking and Durham had some arguable basis in the law to pursue its breach of contract claim against the PGC.

Therefore, the court finds that the PGC cannot establish bad faith or a vexatious multiplying of the proceedings to warrant sanctions under § 1927, nor can the PGC demonstrate that Durham's breach of contract claim had no arguable basis in the law.

### III.  CONCLUSION

For the reasons set forth above, the PGC's motion for sanctions is **DENIED**.

**AND IT IS SO ORDERED**.

                                                         _____
                                                         **DAVID C. NORTON**
                                                         **UNITED STATES DISTRICT JUDGE**

**March 21, 2016**
**Charleston, South Carolina**